J-S22037-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRANDON ROSS SNYDER | : | |
| | : | |
| Appellant | : | No. 136 MDA 2021 |

Appeal from the PCRA Order Entered December 30, 2020
In the Court of Common Pleas of Schuylkill County Criminal Division at
No(s):  CP-54-CR-0001511-2017

BEFORE:  PANELLA, P.J., McCAFFERY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:                **FILED AUGUST 17, 2021**

Brandon Ross Snyder (Snyder) appeals from the order entered in the Court of Common Pleas of Schuylkill County (PCRA court) dismissing his first timely petition filed pursuant to the Post-Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.  Although this is a collateral proceeding, counsel has filed a brief under ***Anders v. California***, 386 U.S. 738 (1967), and ***Commonwealth v. Santiago***, 978 A.2d 349 (Pa. 2009), and a petition for leave to withdraw as counsel.[1]  We affirm the order of the PCRA court and grant counsel's application to withdraw.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] Counsel wishing to withdraw from representation on collateral review is required to file a no-merit letter pursuant to ***Commonwealth v. Turner***, 544
*(Footnote Continued Next Page)*

**I.**

**A.**

This case has a protracted procedural background. The relevant facts and procedural history are as follows. On July 3, 2017, at 7:00 a.m., Snyder approached Bryan Gradwell's (Gradwell) rural property in Norwegian Township from a wooded area to the rear. Gradwell is a tractor-trailer driver and was about to leave for work when Snyder demanded to know if Gradwell had seen his then-girlfriend and the mother of his child, Tanya Viars (Viars). Snyder threatened to smash the window of Gradwell's vehicle if he did not get out of the truck and he threw a piece of shale at the passenger side window. Gradwell called 911 and his neighbor, Robert Kalbach, for assistance. A local contractor, Scott Williams, stopped to help as he passed by the property. Pennsylvania State Police Trooper Mark Knock responded to the scene, followed by two additional state troopers. Snyder continued to behave belligerently and charged at Gradwell. Snyder resisted Trooper Knock's attempts to restrain him, but the three troopers brought him to the ground and arrested him. He was charged with aggravated assault of a police officer,

---

A.2d 927 (Pa. 1988), and **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en banc*), instead of an **Anders** brief, which is utilized in a direct appeal. As we discuss in further detail *infra*, we may accept an **Anders** brief in lieu of a **Turner**/**Finley** no-merit letter.

simple assault, resisting arrest and harassment[2] and related summary offenses.

On December 11, 2017, Snyder filed a *pro se* motion seeking to review certain discovery materials, including police medical records, reports from ambulance personnel and the original complaint. At a pre-trial hearing, the assistant district attorney explained to the court that her office had provided all of materials that it had in its possession to Snyder. The ADA further indicated that she was not sure exactly what Snyder was looking for in terms of medical records, as Trooper Knock did not go to the hospital. (**See** N.T. Hearing, 3/21/18, at 12). The trial court denied the motion.

Snyder waived his right to counsel and elected to represent himself at his April 2019 jury trial, with Adam Weaver, Esq. acting as stand-by counsel. The Commonwealth called Viars as a witness and she testified that she was not present in the area near Gradwell's home on the day of the incident. After Snyder cross-examined her, the trial court excused Viars from court without objection.

On April 3, 2019, the jury convicted Snyder of the aforesaid charges and the trial court found him guilty of related summary offenses. On May 17, 2019, after preparation and receipt of a pre-sentence investigation report, the trial court sentenced him to an aggregate term of 3 to 6 years' incarceration.

---

[2] 18 Pa.C.S. §§ 2702(a)(3), 2702(a)(1), 5104 and 2709(a)(1).

**B.**

After the sentence was imposed, the procedure became a bit convoluted. We previously set forth the next steps of this case as follows:

Snyder filed a timely *pro se* post-sentence Motion on May 22, 2019. The trial court denied his *pro se* Motion by an Order entered on May 24, 2019, and indicated that it would file an Opinion in support of its denial at a later date. In the same Order, the trial court appointed counsel for Snyder. Snyder thereafter filed a *pro se* Petition for relief, on June 4, 2019, to remove appointed counsel. The trial court granted the Petition and removed appointed counsel on June 24, 2019.

On June 27, 2019, Snyder filed a *pro se* PCRA Petition, in which he alleged violations of the United States Constitution and Pennsylvania Constitution, and ineffective assistance of counsel. On July 11, 2019, after improperly determining that Snyder's *pro se* post-sentence Motion was still pending, the PCRA court denied Snyder's *pro se* PCRA Petition as "premature."

On July 24, 2019, the trial court ordered that Snyder's *pro se* post-sentence Motion was denied by operation of law, and issued an Opinion addressing Snyder's issues, as raised in the *pro se* Motion. Snyder, represented by new counsel, filed a Notice of Appeal and a court-ordered 1925(b) Concise Statement.

(**Commonwealth v. Snyder**, 2020 WL 1245129, at *1 (Pa. Super. filed Mar. 16, 2020)).

In addressing the procedural posture of Snyder's appeal, we found that his judgment of sentence became a final appealable order following the trial court's entry of its May 24, 2019 order denying his *pro se* post-sentence motion. He, therefore, had until June 24, 2019, to file a timely direct appeal. **See** Pa.R.A.P. 903(a). He did not file a direct appeal. As we explained:

Instead, Snyder filed his *pro se* PCRA Petition 3 days later, on June 27, 2019, in which he indicated that he had not filed a

- 4 -

direct appeal. On July 11, 2019, the PCRA court denied Snyder's *pro se* PCRA Petition based on its mistaken belief that his *pro se* post-sentence Motion was still pending. However, Snyder's *pro se* PCRA Petition was, in fact, timely filed after his judgment of sentence became final. ***See*** 42 Pa.C.S. § 9545(b)(1) (providing that "any petition under this subchapter . . . shall be filed within one year of the date the judgment becomes final[.]"); ***see also Commonwealth v. Johnson***, 803 A.2d 1291, 1293 (Pa. Super. 2002) (stating that "we have repeatedly held that the PCRA provides the sole means for obtaining collateral review, and that any petition filed after the judgment of sentence becomes final will be treated as a PCRA petition.").

Because Snyder's *pro se* PCRA Petition was timely filed, he was entitled to the appointment of counsel and consideration of his claims. ***See Commonwealth v. Figueroa***, 29 A.3d 1177, 1180 n.6 (Pa. Super. 2011) (stating that "first time PCRA petitioners have a rule-based right to counsel."); ***see also*** Pa.R.Crim.P. 904(C). We therefore vacate the PCRA court's Order denying Snyder's *pro se* PCRA Petition, and we remand for a determination of whether Snyder may proceed *in forma pauperis*, and if so, for the appointment of counsel, as well as any other proceedings as are appropriate under the PCRA.

(***Id.*** at *1-2).

## C.

On remand, the PCRA court conducted an evidentiary hearing on November 5, 2020, at which current counsel, Hank J. Clarke, Esq., represented Snyder. Much of the testimony centered on the trial court's excuse of Viars from trial after the Commonwealth rested its case, despite the defense subpoena. Snyder averred that the court excused Viars before he was able to question her about a letter she wrote to him regarding the incident. (***See*** N.T. PCRA Hearing, 11/05/20, at 6-7). According to Snyder, Viars indicated in the letter that she was in the vicinity on the morning of the

incident and that she was yelling out from a distance of about 100 yards.

Snyder testified on direct examination:

> Q. . . . What do you think she would have said that could have changed the result of the case?
>
> A. I don't know if she was in the truck or in the area. From what she said from what she wrote, she yelled. I merely responded to make sure my family was okay. . . . I believe she can testify she was in the area a hundred yards from where her and I lived — that she did yell and I merely responded to her voice to make sure she's okay.
>
> \*      \*      \*
>
> Q. Okay. When you attempted to call her as a witness for your case in chief, was she available to testify?
>
> A. I don't know. I can't answer that. I was in jail.
>
> Q. . . . Isn't it true that Ms. Viars was incarcerated at the time of your trial?
>
> A. From my understanding she was at a halfway house out west.
>
> Q. And isn't it true that she had been sent back to her prison or halfway house after day one of the trial after she provided Commonwealth testimony?
>
> A. That was the words of the Commonwealth. . . I didn't verify that.
>
> Q. . . . You never got the opportunity to question Ms. Viars on the questions you wanted to talk to her about at trial; correct?
>
> A. And that is the original letter she wrote to me the day after the incident without me having a chance to talk to her. . . . I didn't get a chance to cross-examine her or have her testify to this original letter.

(***Id.*** at 6-9).

On cross-examination, Snyder testified:

Q. . . . Ms. Viars was present on behalf of the Commonwealth and testified and you were present for that; correct?

A. Correct.

Q. And in her testimony, she indicated that she was not in the area . . . where the incident happened; correct?

A. She didn't. . . . I don't recall her testimony the day of trial I don't have the transcripts. . .

Q. Let me read you the question, Brandon. . . . 'I want to direct your attention around seven, 7:30 on July 3 of 2017. Were you in the area of 841 or 843 Ann Street which is the area behind the Lowe's in a tractor trailer on that day around that time?' Her response was, No. . .

\*    \*    \*

Q. At the time Ms. Viars testified back in April of 2019, you had that letter from her indicating whatever the scream you heard; correct?

A. That's right. . . .

Q. Did you have the opportunity to cross-examine Ms. Viars in trial? It's a simple yes or no, Brandon.

A. The evidence that you're asking did I cross-examine was not presented on direct so I didn't have the ability to cross-examine the evidence.

Q. She was asked if she was in that area in that tractor trailer, she said, No. Your letter indicates something different. Did you cross-examine her with that letter at the time? . . . Did you cross-examine her with the letter if her statement was inconsistent?

A. Not at all.

Q. Okay. And you were aware when the Commonwealth asked that Ms. Viars be excused from the subpoena; correct?

A. That's right.

Q. You did not object to that request to have her excused; correct?

A. With the understanding that she was subpoenaed as a defense witness and I would be able to call her when it was my turn to present my case. . .

Q. . . At trial when she was excused, did you request she stay because she had been subpoenaed as a defense witness? . . . You did not ask her to remain because she was subpoenaed as a defense witness; did you?

A. Not when I have the subpoena for her as a witness.

Q. . . . . Your attorney, Adam Weaver, he was standby counsel; correct?

A. Yes.

Q. He sat next to you during the entire trial process, during the trial; correct?

A. That's right.

Q. . . . Did you turn and ask him with reference to Tanya Viars if you should do anything with reference to requesting that she stay?

A. I didn't believe I had to. I had a lawful subpoena with her as a defense witness.

(***Id.*** at 30-33).

On December 30, 2020, the PCRA court dismissed the petition because any testimony Snyder anticipated eliciting from Viars regarding the purported letter could have been brought out during cross-examination after she testified on direct examination that she was not in the vicinity during the incident. (***See*** PCRA Court Opinion 12/30/20, at 6). Snyder timely appealed.

On February 26, 2021, in response to the PCRA court's Rule 1925(b) order, Attorney Clarke filed a statement of intent to file an

*Anders*/*McClendon* brief in this Court in lieu of a concise statement.  *See* Pa.R.A.P. 1925(c)(4).  On May 12, 2021, Attorney Clarke filed a motion to withdraw and an *Anders* brief.  Snyder filed a *pro se* response.[3]

## II.

As noted, PCRA counsel has filed a petition to withdraw and an *Anders* brief.  Although counsel filed an *Anders* brief instead of a *Turner/Finley* no-merit letter, we may accept the filing because *Anders* generally provides greater protection to a defendant.  *See Commonwealth v. Widgins*, 29 A.3d 816, 817 n.2 (Pa. Super. 2011).  To comply with procedural requirements, counsel must "(1) detail the nature and extent of counsel's review of the case; (2) list each issue the petitioner wishes to have reviewed; and (3) explain counsel's reasoning for concluding that the petitioner's issues are meritless." *Commonwealth v. Knecht*, 219 A.3d 689, 691 (Pa. Super. 2019) (citation omitted).  Counsel must send a copy of the brief and motion to withdraw to the petitioner and advise him of his right to proceed *pro se* or through new

---

[3] Snyder's response is handwritten and its meaning difficult to discern.  To the extent he raises an issue of ineffective assistance of PCRA counsel, such claims cannot be raised for the first time after a notice of appeal has been filed in the underlying PCRA matter.  *See Commonwealth v. Smith*, 121 A.3d 1049, 1054 (Pa. Super. 2015) ("Absent recognition of a constitutional right to effective collateral review counsel, claims of PCRA counsel ineffectiveness cannot be raised for the first time after a notice of appeal has been taken from the underlying PCRA matter.") (citation omitted).  Because PCRA claims are more civil than criminal in nature, the burden of moving the case forward rests on the PCRA petitioner.  *See id.*

counsel. *See id.* If counsel meets the *Turner/Finley* requirements, we turn to our own independent review as to whether any meritless issues exist for appeal. *See id.*[4]

In this case, Attorney Clarke represented Snyder during the evidentiary hearing conducted by the PCRA court on this matter. In the *Anders* brief, Attorney Clarke details the factual and procedural history of the case and avers that, after diligent review of the record, he has not found any meritless bases for appeal. He outlines the three issues Snyder raised for PCRA review and explains his rationale for concluding the claims are meritless. Counsel also filed the letters he sent to Snyder informing him that he may retain new counsel or proceed *pro se* to raise any additional points in this Court, and he avers that he provided Snyder with a copy of the brief and the motion to withdraw. Because counsel has complied with the applicable requirements, we proceed to an independent review of Snyder's issues. *See Knecht*, *supra* at 691.

## III.

## A.

Snyder challenges two trial court rulings that occurred prior to and during the trial. First, he contends that the trial court erred in excusing Viars

---

[4] In reviewing the denial of PCRA relief, our standard of review is limited to determining whether the record supports the PCRA court's factual determinations and whether its decision is free of legal error. *See Commonwealth v. Lopez*, 249 A.3d 993, 998 (Pa. 2021).

from trial at the close of the Commonwealth's case before he had the opportunity to question her regarding the letter she sent to him indicating she was in the vicinity of Gradwell's property on the morning of the incident. Snyder argues that his "rights under the United States and Pennsylvania Constitutions were violated when the trial court excused [Viars, who was] under lawful subpoena from defendant-Appellant from trial following [her] testimony on behalf of the Commonwealth." (**Anders**' Brief, at 5). Second, he contends the trial court erred in preventing him from uncovering exculpatory evidence by denying his pre-trial motion seeking review of discovery materials.

However, neither of those claims of trial court error is properly before us in this collateral proceeding because they are not cognizable bases for PCRA relief. **See Commonwealth v. Little**, 246 A.3d 312, 331 (Pa. Super. 2021) ("On review of the denial of PCRA relief, this Court has no jurisdiction to rule on the merits of a pure claim of trial court error.") (citation omitted.). Correspondingly, Snyder waived those issues because he could have raised them in a direct appeal of his judgment of sentence. **See** 42 Pa.C.S. §§ 9543(a)(3), 9544(b) (requiring PCRA petitioners to establish the allegation of error has not been waived and providing that "an issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal, or in a prior state postconviction proceeding.").

Simply, the PCRA is not a basis for raising issues that could have been litigated on direct appeal. Snyder's claims involving trial court error fail.

**B.**

With regard to Snyder's claims of ineffective assistance trial counsel, the record reflects that he waived his right to representation and acted *pro se* during his trial. The law is clear that he cannot raise claims of ineffective assistance of standby counsel. *See Commonwealth v. Williams*, 196 A.3d 1021, 1027 (Pa. 2018) ("We will not consider any ineffectiveness claims that arise from the period of self-representation.").

> When a defendant elects to proceed at trial *pro se,* the defendant—and not standby counsel—is in fact counsel of record and is responsible for trying the case. This understanding of the limited role of standby counsel is essential to satisfy the United States Supreme Court's directive that a defendant's choice to proceed *pro se* must be honored out of that respect for the individual which is the lifeblood of the law even when the defendant acts to his or her own detriment.

*Id.* (citations and quotation marks omitted). Thus, a defendant who chooses to represent himself cannot obtain PCRA relief by raising claims of ineffective assistance of standby counsel. *See id.*

Snyder was advised of his right to appointed counsel and he expressly gave up that right and chose to act as his own attorney at trial. (*See* Written Waiver of Counsel, 10/30/18). The trial court permitted him to proceed *pro se* after an extensive oral colloquy during which it emphasized that he would be bound by all of the rules of procedure and evidence and that he was facing significant prison time. (*See* N.T. Hearing, 1/05/18, at 7-8). The court

advised that an attorney might be aware of defenses and grounds for objection that Snyder was unfamiliar with, and that such issues could be lost permanently if they were not timely raised at trial. (**See id.** at 8-9). The court made a determination that Snyder made a knowing, voluntary and intelligent waiver of this right to counsel. (**See id.** at 9).

Because Snyder clearly and repeatedly expressed his decision to represent himself at trial, "we will not consider any ineffectiveness claims that arise from the period of self-representation." **Williams**, **supra** at 1027. His claims of ineffective assistance of standby counsel are meritless.

Order affirmed. Counsel's application to withdraw granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 08/17/2021